[Cite as *Viars v. Ironton*, 2016-Ohio-4912.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

RONNIE VIARS, ET AL,          :          Case No. 16CA8

    Plaintiffs-Appellants,          :

    v.          :          <u>DECISION AND</u>
                       <u>JUDGMENT ENTRY</u>

IRONTON AND LAWRENCE          :
COUNTY AREA COMMUNITY
ACTION ORGANIZATION,          :          **RELEASED: 7/6/2016**

    Defendant-Appellee.          :

_____

<u>APPEARANCES</u>:

Ronnie A. Viars, Kitts Hill, Ohio, pro se appellant.

Richard F. Bentley, Bentley Law Firm, LLC and Curtis B. Anderson, Edwards, Klein, Anderson & Shope, PLLC, Ironton, Ohio for appellee.

_____

Harsha, J.

{¶1}     Ronnie and Dreama Viars filed a pro se complaint against the Ironton and Lawrence County Area Community Action Organization (the "Organization") alleging that the Organization trespassed upon their property and removed a tree situated along a stream bank. The Viars alleged that the Organization's removal of the tree altered the stream dynamics, causing damage to their property. The trial court granted summary judgment in favor of the Organization.

{¶2}     In this pro se appeal Ronnie Viars asserts that the trial court erroneously granted summary judgment for the Organization because: (1) the trial court did not apply the relevant statutory provisions correctly, (2) there were disputed material facts, (3) the trial court failed to construe the evidence in his favor, (4) the trial court failed to hold an evidentiary hearing, and (5) the trial court did not address all the counts of his

complaint. However, the Organization presented undisputed evidence that (1) Viars did not own the property where the tree had grown, (2) the removal of the tree from the stream and the temporary placement of the stump on the opposite stream bank did not cause Viars's erosion damage, and (3) the Organization performed its work within the scope of its permit and used reasonable care.  Because the trial court correctly granted summary judgment to the Organization, we overrule Viars's third, seventh, eighth, ninth, and tenth assignments of error.

{¶3}    Next, Viars claims that the trial court violated his state and federal rights to a jury trial when it granted summary judgment. Because summary judgment is a proper procedural mechanism for disposing of claims totally lacking a factual basis, the trial court did not violate Viars's right to a jury trial. We overrule Viars's first and second assignments of error.

{¶4}    Viars also claims that the trial court erred when it denied his partial motion for summary judgment on counts three and four of his amended complaint. However, because summary judgment in the Organization's favor was appropriate on those counts, that precluded a judgment in his favor. The fourth and fifth assignments of error are meritless and we overrule them.

{¶5}    Finally, Viars asserts that the trial court erred when it reassigned the case to another judge, who showed favoritism.  However, the trial court stated on the record that the reassignment was based on docket congestion, which is an appropriate basis for reassignment. And, only the Supreme Court of Ohio has jurisdiction to consider disqualification for bias or favoritism. Finally, Viars cites to no evidence of any judicial prejudice or bias that would merit reversal of the trial court's decision. Thus, we overrule

Viars's sixth and eleventh assignments of error and affirm the judgment of the trial court.

## I. FACTS

{¶6}    The Organization operates a stream maintenance program under a permit from the Lawrence Soil and Water Conservation District. The Organization clears log jams and accumulated flood debris that might restrict the flow of water and cause further flood damage.

{¶7}    In 2012 the Organization was working on Symmes Creek. Viars and the Mootzes, neighbors opposite Viars on Symmes Creek, gave the Organization a temporary easement, together with the right of ingress and egress, to clear log jams and debris from Symmes Creek along their properties. The Organization removed a large tree that had fallen into the creek nine months earlier after a storm uprooted it and blew it over. Because the large size of the tree, its stump, and root ball made removing it difficult, after the Organization removed this debris from the stream, it temporarily placed the stump and root ball on the Mootzes' bank until it could safely remove them.

{¶8}    According to Viars the fallen tree had provided a natural "tree kicker" and helped prevent erosion on his property.[1] Viars testified that to use the tree as a "kicker" he simply left it undisturbed where it fell – he did not take any affirmative steps to angle or move the tree or to secure it with cable or roping after it fell, nor did he cut limbs or attach brush or evergreen fill.  Viars testified that the tree, which lay entirely across the creek and up onto the bank on the opposite side, stayed in its location until the Organization removed it. Viars documented the fallen tree's location with photographs,

---

[1] According to materials Viars attached to his Amended Complaint, a tree kicker is a cut tree that is placed at a 30 to 40 degree angle to the bank and is secured with cable to an anchor tree growing along the bank. Additional brush or evergreens should be tied together in bunches and cabled to the kicker tree.

which matched those of the Organization. Viars also testified that he measured the distance from the tree to the creek-side corner of his house as approximately 195 feet. Viars contends that the Organization caused additional damage to his property as a result of temporarily placing the stump and root ball on the Mootzes' stream bank.

{¶9}   The Viars filed a pro se complaint that alleged the Organization:  Count 1 - trespassed on his land without his consent; Count 2 - recklessly cut and removed a tree from his property in violation of R.C. 901.51; Count 3 – violated his riparian rights by acting recklessly with regard to his property and safety; Count 4 – intentionally interfered with his riparian rights by placing his property in the stream; Count 5 – negligently caused damage by failing to correct a known problem; and Count 6 – intentionally violated its duty of care to him in such a reckless way that it was done intentionally, with malice, and with total disregard to his rights or safety.

{¶10}   Viars filed a partial motion for summary judgment on Counts 3 and 4, stating that these counts were based on the Organization's placement of the stump and root ball on the Mootzes' stream bank. He claimed that the placement of the stump within the banks of Symmes Creek was an absolute nuisance or nuisance per se, and alternatively, it was a qualified nuisance because placing the stump in an unnatural place caused an alteration of the water course and changed the stream dynamics. Viars included his affidavit and an affidavit of his neighbor, John Brumfield, in which both of them state that the stump was left on the stream bank opposite Viars's property for a year and it caused noticeable erosion damage.

{¶11} The Organization opposed Viars's motion by arguing that its stream maintenance program did not qualify as the type of abnormally dangerous activity that

would be an absolute nuisance under the law. They also asserted that the removal of the tree from the stream and the placement of the stump on the bank was done with reasonable care and in accordance with the permit granted by the Lawrence Soil and Water Conservation District.  The Organization included an affidavit of the Director of the Stream Maintenance Program and a letter to Viars from the Conservation District's Floodplain Administrator that explained a licensed professional engineer would need to perform a hydrologic and hydrodynamic study to determine if the removal of the tree caused erosion damage to Viars's property.  It further asserted that Viars had existing erosion damage prior to the tree removal and that he had made previous attempts to stabilize his bank in the same area.

**{¶12}**  The trial court denied Viars's motion.

**{¶13}**  Later at his deposition Viars testified that he lives in a floodplain and has experienced numerous flooding since he purchased the property in 2003. He testified that his property and the interior of his house flooded in 2004. In 2006 or 2007 he added eight to ten 30-ton truck loads of limestone rock to his creek bank in an attempt to stop erosion. Since adding limestone to the bank, his property and house have flooded two more times – in March 2010 and in June 2015.

**{¶14}**  Viars testified that his trespass claim against the Organization was based upon its removal of the fallen tree outside the 90-day period granted by the temporary easement. He testified that the tree removal occurred in mid-August after the expiration of his temporary easement. He acknowledged that none of the tree removal activity occurred on his property because the organization worked from the Mootzes' property. However, he alleges that the tree itself was on his property and the Organization

trespassed upon his property when workers pulled the tree from his side to the Mootzes' bank to remove it.

{¶15} Viars testified that his reckless tree cutting claim was based on the Organization's cutting and removing the fallen tree from his property and that the remaining four counts of his complaint were based on the erosion damage he alleged was caused by the removal of the tree and its temporary placement on the Mootzes' stream bank.

{¶16} Viars testified that he had never had his property surveyed nor had he had any engineering or hydrological studies done to determine if the Organization's actions caused property erosion damage.

{¶17} The Organization filed a summary judgment motion, attaching the affidavit and survey of a registered surveyor, Jeffrey Eastham. As part of the survey he prepared a plat. Based on this work Eastham concluded Viars did not own the property where the tree had fallen. Instead, the survey showed that the fallen tree was located north of Viars's property boundary.

{¶18} The Organization also submitted the affidavit and report of licensed engineer, Paul Amburgey. He determined that, in his professional engineering opinion, the removal of the tree from Symmes Creek and the temporary placement of the stump/root ball on the opposite creek bank did not cause damage to Viars's property.

{¶19} The Organization argued that it was entitled to summary judgment because Viars did not own the land the fallen tree was on, so his trespass claim  and his reckless cutting and removing a tree must fail.  And, because the Organization's removal of the tree and temporary placement of the stump and root ball did not cause

damage to Viars's property, his claims for nuisance, violations of his riparian rights, negligent failure to correct a known problem, and actual malice entitling him to punitive damages must also fail.

{¶20} Viars opposed the motion, claiming that there were "issues" with the Eastham survey, but he did not submit any expert testimony contesting Eastham's survey or Amburgey's erosion study. Instead, he submitted a copy of his property deed and the Eastham survey with presumably his own handwritten notations pointing our purported flaws or omissions with the survey. Viars also argued that Amburgey's conclusions were wrong and not based on sufficient information. But he did not submit any engineering reports or other expert evidence of his own to show a causal connection between the tree removal and temporary stump placement and his alleged property erosion damage. Although Viars personally disagreed with the survey and the erosion study, he did not file a professional survey or erosion analysis that discredited them.

{¶21} He did file a separate motion to strike Eastham's survey and Amburgey's erosion study on the ground that they were "inaccurate and incomplete and not adequate for this case", but he provided no rationale or evidentiary support for the motion.

{¶22} The Organization filed a reply that argued Viars presented no admissible evidence, he merely repeated the allegations from his complaint, and he is not personally qualified to testify as a professional surveyor or engineer.

{¶23} The trial court denied Viars's motion to strike and granted the Organization's summary judgment motion.

## II. ASSIGNMENTS OF ERROR

{¶24} Viars assigns the following eleven errors for our review:

I.      THE TRIAL COURT ERRED WHEN [IT] DEPRIVED THE PLAINTIFF-APPELLANT OF HIS "SUBSTANTIAL RIGHT" GUARANTEED BY THE UNITED STATES CONSTITUTION ARTICLE 3, SECTION 2 AND THE 6TH AMENDMENTS [SIC] "THE RIGHT TO A TRIAL BY JURY."

II.     THE TRIAL COURT ERRED WHEN IT DEPRIVED THE PLAINTIFF-APPELLANT OF HIS "SUBSTANTIAL RIGHT" GUARANTEED BY ARTICLE 1, SECTION 5 OF THE OHIO STATES [SIC] CONSTITUTION, THE RIGHT TO A TRIAL BY JURY.

III.    THE TRIAL COURT ERRED WHEN IT FAILED TO INVOLVE THE PROPER AUTHORITIES OF WHICH THE ALLEGED VIOLATIONS OF STATE STATUES [SIC], CODE, AND FEDERAL, STATE AND LOCAL ORDINANCE STEM FROM DEPRIVING HIM OF EQUAL PROTECTION OF THE LAW.

IV.     THE TRIAL COURT ERRED WHEN IT OVERRULED THE PLAINTIFFS-APPELLANT MOTION FOR PARTIAL SUMMARY JUDGMENT.

V.      THE TRIAL COURT ERRED WHEN IT OVERRULED THE PLAINTIFFS-APPELLANT MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ESTABLISHING THE FACTS THAT ARE AND ARE NOT IN DISPUTE TOGETHER WITH THE LAWS INVOLVED WITH THE CASE AT THE TIME.

VI.     THE TRIAL COURT ERRED WHEN IT BROUGHT IN ANOTHER JUDGE TO THE CASE AND HE FAILED TO FAMILIARIZE HIMSELF WITH ALL THE ISSUES OF THIS CASE.

VII.    THE TRIAL COURT ERRED WHEN [IT] GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS AS GENUINE ISSUES OF FACTS ARE IN DISPUTE.

VIII.   THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON ALL COUNTS FOR IT FAILED TO CONSTRUE THE EVIDENCE MOST STRONGLY IN FAVOR OF THE PLAINTIFF-APPELLANT THE NONMOVING PARTY.

IX.     THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS-APPELLEE'S SUMMARY JUDGMENT MOTION ON ALL COUNTS WITHOUT HAVING SOME TYPE OF A [SIC] EVIDENTIARY HEARING AND FINDING OF FACTS ON EACH CAUSE OF ACTION.

> X.     THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS-APPELLEE'S MOTION FOR SUMMARY JUDGMENT MOTION [SIC] ON ALL COUNTS IS A MISCARRIAGE OF JUSTICE THAT DEPRIVED PLAINTIFF-APPELLANT A SUBSTANTIAL RIGHT.

> XI.    THE TRIAL COURT ERRED BY THE IRREGULARITIES IN THE RECORD AND PROCEEDINGS.

## III. LAW AND ANALYSIS

**{¶25}**  Viars is acting pro se in this appeal, as he has throughout the lawsuit. Because we prefer to review a case on its merits rather than dismiss it due to procedural technicalities, we give considerable leniency to pro se litigants. *In re Estate of Pallay*, 4th Dist. Washington No. 05CA45, 2006–Ohio–3528, ¶ 10; *Robb v. Smallwood*, 165 Ohio App.3d 385, 2005–Ohio–5863, 846 N.E.2d 878, ¶ 5 (4th Dist.); "Limits do exist, however. Leniency does not mean that we are required 'to find substance where none exists, to advance an argument for a pro se litigant or to address issues not properly raised.' " *State v. Headlee*, 4th Dist. Washington No. 08CA6, 2009–Ohio–873, ¶ 6, quoting *State v. Nayar*, 4th Dist. Lawrence No. 07CA6, 2007–Ohio–6092, ¶ 28. We consider a pro se litigant's appellate brief if it contains some cognizable assignment of error. *Coleman v. Davis*, 4th Dist. Jackson No. 10CA5, 2011–Ohio–506, ¶ 14 (considering pro se appellant's brief because it had "some semblance of compliance" with appellate rules).

**{¶26}**  Here, Viars has identified some cognizable assignments of error and he labels different sections such as "Statement of Facts" and "Argument" for each of the assignments of error. However, the brief does not comply with App.R. 16(3) – (7) and many of his arguments are vague, which makes our task more difficult than need be. He

does not make references to the place in the record where the errors have allegedly occurred, nor does he make references to the parts of the record on which he relies for his arguments.

**{¶27}** For purposes of our analysis, we group Viars's assignments of error into four main categories and address several at once. *State v. Thompson*, 4th Dist. Washington App. No. 13CA41, 2014-Ohio-4665, ¶ 10 ("the appellate court has the option to address two or more assignments of error at once").

A. Errors in Granting Summary Judgment Motion
(Third, Seventh, Eighth, Ninth, and Tenth Assignments of Error)

1. Standard of Review

**{¶28}** Appellate review of a summary judgment decision is de novo, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made. Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap*, 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, ¶ 26.

**{¶29}** The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996);

*Chase Home Finance* at ¶ 27.  Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial.  *Dresher* at 293.

### 2.  Third Assignment of Error

**{¶30}**   In his third assignment of error Viars argues that the trial court erred when it failed to find the Organization liable under R.C. 901.51 for recklessly cutting and removing the fallen tree. He also cites Lawrence County Special Purpose Flood Damage Reduction Resolution 4.9(C) and R.C. 6105.133 but does not provide a reasoned argument concerning the relevance of these provisions to his assignment of error. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. * * * It is not the function of this court to construct a foundation for [an appellant's] claims [.]" (Citations omitted.) (Alterations sic.), *Coleman v. Davis*, Jackson App. No. 10CA5, 2011–Ohio–506, at ¶ 13.  In other words, "[i]t is not * * * our duty to create an argument where none is made." *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. Summit App. No. 25281, 2011–Ohio–435, ¶ 7. Thus, we will only consider the trial court's failure to find the Organization liable under R.C. 901.51. Because this third assignment of error challenges the trial court's grant of summary judgment to the Organization on count 2 of his complaint, we will address it along with Viars's other challenges to the trial court's grant of summary judgment.

**{¶31}**  Viars claimed that the Organization violated R.C. 901.51 when it removed the fallen tree from the creek. R.C. 901.51 governs injuries to vines, bushes, trees, or crops and requires Viars to prove he owned the land the fallen tree was on:

No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.

In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused.

{¶32} Both Viars and the Organization introduced photographs of the location of the fallen tree. Based on the photographs and Viars's deposition testimony, there was no factual dispute concerning the location of the fallen tree along the creek bank. Viars testified that he measured out the distance from the fallen tree to the corner of his house and the distance was approximately 195 feet. Viars introduced a copy of his property deed that contained a legal description of his property boundaries but he did not present a professional survey and he testified that he had never had a survey performed.

{¶33} The Organization introduced Eastham's survey, which he performed based on the legal description of Viars's deed. Based upon the survey Eastham concluded the fallen tree was located north of Viars's property boundary, not on his property. Amburgey also reviewed the Eastham survey and photographs and visited the site and determined that the tree was located approximately 175 feet from Viars's residence and about 60 feet north of Viars's property line.

{¶34} The trial court did not err in finding in the Organization's favor on Viars's claim under R.C. 901.51 because all of the evidence shows that the tree was never on Viars's property. Viars himself testified that the tree was about 195 feet from his residence, which would place the fallen tree even farther north than Eastham's survey and Amburgey's measurements, and about 80 feet north of Viars's property line. Although Viars argued that there were genuine issues of material fact about his northern

property line based upon what he argued were missing "marks," he did not hire a professional surveyor to survey his property and presented no alternative northern boundary line for the trial court's consideration.

{¶35}  The trial court properly relied upon the Organization's survey to determine the boundary lines of Viars's property. *See Robinson v. Armstrong,* 5th Dist. Guernsey App. No. 03CA12, 2004-Ohio-1463, ¶ 39 (the trial court cannot make boundary line determinations based upon the legal description in the deed appellants submitted where appellants did not submit a professional boundary line survey of their property:  "Without a survey to support their argument regarding the location of the old boundary fence, the only evidence the trial court had to rely upon was the survey submitted by appellees."). Because the indisputable evidence shows that Viars does not own the property where the tree was growing or had fallen, the trial court properly granted the Organization's summary judgment motion on Viars's reckless tree cutting claim under R.C. 901.51.

{¶36}  We overrule Viars's third assignment of error.

3. Seventh and Tenth Assignments of Error

{¶37}  In his seventh and tenth assignments of error, Viars claims that the trial court erred when it granted summary judgment on all counts of his complaint because genuine issues of material fact are in dispute and the trial court did not address all the elements of each of his counts.

{¶38}  As we previously determined in analyzing Viars's third assignment of error, the trial court properly granted summary judgment on count 2, reckless tree cutting.

**{¶39}** Likewise, the trial court properly granted summary judgment to the Organization on Viars's claim for trespass, count 1. The essential elements necessary to state a cause of action in trespass are: (1) an unauthorized intentional act, and (2) entry upon land in the possession of another. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (4th Dist.1993). Viars acknowledged that the Organization conducted all of its tree removal activity from Mootzes' property, but he based his trespass claim on his belief that the tree had fallen on his property. However, the Organization established the undisputed fact that the fallen tree was not on Viars's property. Because Viars did not own the property where the tree lay, the Organization is entitled to summary judgment on Viars's trespass claim.

**{¶40}** Counts 3 and 4 are based upon Viars's claims that the Organization violated his riparian rights. In his motion for partial summary judgment he explained that those counts were claims for private nuisance based upon the erosion damage the Organization caused by removing the tree from the steam and temporarily placing its stump on Mootzes' bank. A private or "qualified nuisance" is premised upon negligence. It consists of a lawful act that is so negligently or carelessly done as to have created an unreasonable risk of harm, which in due course results in injury to another. *Brown v. Scioto Cty. Bd. of Commrs.* at 713. Because the Organization presented undisputed expert testimony that these actions did not cause Viars's erosion damage, there was no "injury" to Viars's property and the trial court granted summary judgment to the Organization on counts 3 and 4.

**{¶41}** The Organization submitted an affidavit and report of their expert Amburgey, who testified that he is a registered professional engineer employed by E.L.

Robinson Engineering. Amburgey testified that he conducted an inspection of Viars's property, the Symmes Creek area, Eastham's survey, photographs, the Special Flood Hazard Area Development Permit issued to the Organization, relevant flood plain maps, and related flood insurance study documents. Based on his review of the materials and his engineering education and experience, Amburgey determined in his professional opinion that the removal of the fallen tree from the creek bank and the temporary placement of the tree trunk and root nest on the Mootzes' creek bank did not cause any damage to Viars's property. The Organization introduced Amburgey's affidavit, expert report and supporting documentation in support of its summary judgment motion.

{¶42} Viars criticized Amburgey's testimony as "nothing more than a bought and paid for opinion to try to make facts in the record without any studies at all to base his opinion on." However, Viars did not retain an engineer or provide the court with any expert evidence to support his claim that the Organization damaged his property when they removed the tree or when they placed the stump on Mootzes' creek bank. In support of his earlier motion for partial summary judgment, Viars submitted his own affidavit and that of his neighbor, John Brumfield, in which both stated that the removal of the tree and the placement of the stump caused erosion damage to Viars's property. However, Viars and Brumfield did not testify to having any education or training that would qualify either of them as experts on erosion causation.

{¶43} Expert testimony is required to establish general causation and specific causation in cases involving flooding and soil erosion because the determination involves a scientific inquiry into matters beyond the knowledge or experience possessed by lay persons. "Flooding issues are very complex matters and therefore, generally,

require the use of expert testimony to prove the cause and frequency of flooding." *State ex rel. Post v. Speck*, 3rd Dist. Mercer No. 10-2006-001, 2006-Ohio-6339, ¶ 61; *see generally Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16 (2007) ("Establishing general causation and specific causation in cases involving exposure to mold or other toxic substances involves a scientific inquiry, and thus causation must be established by the testimony of a medical expert."). Although Viars and Brumfield may testify as lay persons about the *existence* of erosion damage, i.e. that it occurred, they provided no basis to establish themselves as experts to give testimony about the *cause* of that erosion.  *See Speck, supra*, ¶ 62 (Emphasis added.) ("While the *cause* of the flooding is a complex factual issue that must be proven through expert witnesses, the *existence* of flooding can certainly be proven through the testimony of the landowners and photographs.").  Before a witness can testify as an expert, Evidence Rule 702(B) requires that the witness have "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Because neither Viars nor Brumfield qualify as experts on erosion, the trial court did not err in disregarding their affidavit testimony concerning the causation of Viars's property erosion. *Valentine v. PPG Industries, Inc.*, 4th Dist. No. 03CA17, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, ¶ 21, aff'd sub nom. *Valentine v. Conrad,* 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 21 (expert testimony must comply with Evid.R. 702 to be admissible during summary judgment proceedings).

{¶44}    Viars acknowledged that many years prior to the Organization's actions, he had existing erosion damage on his property. He had made several attempts to prevent further erosion by adding eight to ten 30-ton truck loads of limestone rock to his

creek bank in 2006 or 2007. Amburgey also noted longstanding stream bank erosion damage and evidence of previous erosion mitigation efforts such as heavy wire fencing and dumped rock and concrete block fragments. Thus, there is no dispute that erosion damage on Viars's property exists and had existed for a long time. The question is causation. Here the Organization presented expert testimony that its removal of the fallen tree and temporary placement of the stump on Mootzes' bank did not cause Vairs's erosion damage.  Viars presented no expert testimony to refute Amburgey or to establish a genuine issue of material fact concerning the causation of his erosion damage.  There is no admissible evidence in the record that the Organization caused Viars to suffer property damage when it removed the fallen tree and placed the stump and root ball on Mootzes' creek bank. The trial court did not err when it granted summary judgment for the Organization on counts 3 and 4.

{¶45} Count 5 alleges that the Organization acted negligently in carrying out its stream maintenance duties; Count 6 alleges Viars is entitled to punitive damages because the alleged negligent acts were in fact carried out in such a reckless manner that it constituted actual malice. A successful negligence action requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ.R.56 provides, the defendant is entitled to judgment as a matter of law. *Martin v. Lambert*, 4th Dist. No. 12CA7, 2014-Ohio-715, 8 N.E.3d 1024, ¶ 15, appeal not allowed, 139 Ohio St.3d 1471, 2014-Ohio-3012, 11 N.E.3d 1193, ¶ 15. To

show actual malice, which is necessary for an award of punitive damages, the plaintiff must show (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987).

{¶46}  The trial court granted the Organization summary judgment on these claims based upon the evidence that the Organization acted both within the scope of the easements and within the scope of the Lawrence Soil and Water Conservation District permit to perform stream clean up. The trial court concluded that Viars had the burden to produce evidence to support his claims that the Organization violated its duty of care and that it acted with actual malice; however Viars failed to meet this burden to produce any evidence to support these claims.

{¶47}  The Director of Stream Maintenance for the Organization provided affidavit testimony that the fallen tree was lying in the stream and required removal to prevent jams and future flooding.  Due to the size of the stump and root ball, immediate removal was not possible, thus temporary placement of it on the Mootzes' stream bank was necessary for the safety of the employees.  Administrative findings made by the Floodplain Administrator for the Lawrence Soil and Water Conservation District concluded that the Organization had not violated the permit by removing the fallen tree from the creek.

{¶48}  Viars argued that a letter from the Lawrence County Commissioners to the Organization raised material facts about whether the Organization "did no wrong" under the permit. In the letter the Commissioners asked the Organization to re-evaluate

Viars's request to have the tree stump placed back into its prior location, add materials to stabilize the bank, pay for the cost of the removed fallen tree, and reimburse Viars for any damages, and to report the conclusion of the re-evaluation back to them within two weeks.

**{¶49}** The letter contains no statements of fact about the work performed under the permit or any other possible wrongdoing on the part of the Organization. We can find no evidence in the record that the Organization's removal of the fallen tree or stump placement violated the permit, was reckless, was done with intentional malice, or otherwise violated a duty of care. And, as noted previously, Viars failed to establish that the Organization's actions caused any injury to his property. The trial court correctly granted the Organization's summary judgment motion on Counts 5 and 6 of Viars's amended complaint.

**{¶50}** We overrule Viars's seventh and tenth assignments of error.

### 4. Eighth Assignment of Error

**{¶51}** Viars argues in his eighth assignment of error that the trial court did not construe the evidence most strongly in his favor. In support he states that the trial court "turned a blind eye" to his evidence, but he cites to no specific evidence in the record to support this assignment of error. Under App.R. 12(A)(2), we may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based. In its decision and judgment entry the trial court correctly stated the legal standard that "the nonmoving party is entitled to have the evidence most strongly construed in their favor." In our de novo

review of the record, we find nothing to indicate the trial court failed to apply this standard. We overrule Viars's eighth assignment of error.

### 5. Ninth Assignment of Error

{¶52} In his ninth assignment of error Viars claims the trial court erred when it failed to hold an evidentiary hearing. A trial court is not required to hold an evidentiary hearing or oral argument on motions for summary judgment. *See* Civ.R. 56. "Although Civ.R. 56 makes reference to a hearing, the rule does not require an oral hearing on every motion for summary judgment. Rather, the hearing contemplated by Civ.R. 56 may involve as little as the submission of memoranda and evidentiary materials for the court's consideration." (Citations omitted.) *Barstow v. Waller*, 4th Dist. Hocking No. 04CA5, 2004-Ohio-5746, ¶ 51; "Ohio appellate courts 'uniformly agree that a trial court is not required to schedule an oral hearing on every motion for summary judgment.'" *U.S. Bank Natl. Assn. v. Wigle*, 7th Dist. Mahoning No. 13 MA 32, 2015-Ohio-2324, ¶ 13. Therefore, we overrule Viars's ninth assignment of error.

### B.  Right to a Trial by Jury
### (Assignments of Error One and Two)

{¶53} Viars's first and second assignments of error are meritless as a result of our disposition of the third, seventh and tenth assignments of error, so we summarily overrule them. *See* App.R.12(A)(1)(c). Because summary judgment was appropriate, he had no right to a jury trial:

> [T]he right to a jury trial is only enforceable where there are factual issues to be tried. Accordingly, the proper granting of a motion for summary judgment does not abridge an individual's constitutional right to a jury trial. Since we have found that the granting of the defendants' motions for summary judgment was proper, we conclude that appellants were not deprived of their right to a trial by jury. (Citations omitted.)

*Barstow* at ¶ 53.

### C. Errors in Denying Viars's Partial Motion for Summary Judgment
### (Assignments of Error Four and Five)

**{¶54}** In his fourth and fifth assignments of error Viars argues that the trial court erred in denying his partial motion for summary judgment on counts 3 and 4. Because we find that the trial court correctly granted the Organization summary judgment in its favor on counts 3 and 4 it follows that Viars was not entitled to summary judgment on those counts.  Viars's fourth and fifth assignments of error are meritless and overrruled. *See* App.R.12(A)(1)(c).

### D. The Case Reassignment and Alleged Favoritism
### (Assignments of Error Six and Eleven)

**{¶55}** In his sixth assignment of error Viars claims that the trial court erred when it assigned the case to another judge with a "friendship" to the Organization. In his eleventh assignment of error, Viars claims "irregularities" in the record and "showing favor" towards the Organization.

**{¶56}** To the extent Viars argues that there was an error based upon the case reassignment, his argument fails.  A case can be transferred to another judge due to docket congestion. *Silverman v. American Income Life Ins. Co. of Indianapolis,* 10th Dist. Franklin App. Nos. 01AP338, 01AP339, 2001-Ohio-8890, *14 ("Appropriate reasons for reassignment include absence of the assigned judge or docket congestion for the assigned judge"). The transcript from the status conference held on October 27, 2015, shows that the trial court advised the parties that the trial docket for the upcoming months was full and he may request to have another judge take over the case. Viars did not object.

**{¶57}** To the extent Viars argues that the trial judge should be disqualified because of judicial bias or favoritism, we have no jurisdiction to consider his claim. *Cooke v. Bowen*, 4th Dist. Scioto No. 12CA3497, 2013-Ohio-4771, ¶ 9-11. "Judicial bias is 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by law and the facts.' " *Id.* quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. R.C. 2701.03 provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced and requires an affidavit of prejudice to be filed with the Supreme Court of Ohio.  A court of appeals lacks "authority to pass upon disqualification or to void the judgment of the trial court upon that basis." *Beer v. Griffith*, 54 Ohio St.2d 440, 441–442, 377 N.E.2d 775 (1978).

**{¶58}** To the extent Viars argues that the judge acted unfairly or with a prejudice against him, he fails to cite to any evidence in the record.  "Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.'" *Rick's Foreign Exchange Co. v. Greenlee,* 2d Dist. Montgomery No. 26096, 2014-Ohio-4505, ¶ 28. "The appearance of bias or prejudice must be compelling to overcome these presumptions." *Id.; In re Jorgensen,* 5th Dist. No. 07-CA-96, 2008-Ohio-2967, ¶ 245-246; *see generally State v. Dean,* 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 2 (If the record indicates that the trial was affected by judicial bias, the remedy is a new trial).  Viars argues that "the court was either maneuvered by trickery . . . or tried to hide the issues from being adjudicated showing favor for Defendant-Appellee," but he does not cite any evidence in

the record to support his claim. Upon reviewing the record we find no evidence of any judicial bias or prejudice to overcome the presumption of judicial integrity.

**{¶59}**  We overrule Viars's sixth and eleventh assignments of error.

## IV. CONCLUSION

**{¶60}**  The trial court properly entered summary judgment for the Organization on all the claims in Viars's amended complaint because there was no genuine issue of material fact and the Organization was entitled to judgment as a matter of law.  Because the trial court properly granted summary judgment in the Organization's favor on all of Viars's claims, Viars's right to a jury trial was not violated, nor was he entitled to summary judgment in his favor on any of the claims. There was no evidence that the reassignment of the case to another judge was irregular; we do not have jurisdiction to review any claims of judicial bias.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
     William H. Harsha, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**