[Cite as *Watson v. Minnich*, 2026-Ohio-1151.]

**Released 3/20/26**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| AMY WATSON, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 25CA18 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| MARTIN DEREK MINNICH, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

James R. Kingsley, Kingsley Law Office, Circleville, Ohio, for appellant.

Briana L. Morris, Miller Bahnson Law, LLC, Columbus, Ohio, for appellee.
_____

Smith, P.J.

{¶1} Martin Derek Minnich ("Husband") appeals the Judgment Entry-Decree of Divorce entered April 14, 2025 by the Pickaway County Court of Common Pleas. Amy E. Watson is "Wife." Husband challenges only one provision of the trial court's orders concerning an e-Trade account, which was found to be marital property and therefore, subject to equitable division. However, based upon our review, we find that because appellant has failed to file a transcript of the proceedings, this court has no choice but to presume the regularity of the proceedings and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Husband and Wife were married in 2014. The parties have two minor children. On April 6, 2023, Wife filed a complaint for divorce. On April 25, 2023, Husband filed an answer and counterclaim. Wife timely responded to the counterclaim.

{¶3} The parties each requested the court determine custody, or in the alternative shared parenting. They also requested equitable division of real and personal marital property and equitable division of debts and liabilities. Wife requested temporary and permanent spousal support. During the underlying proceedings, the magistrate issued various orders and the parties entered into agreed orders regarding the children. The parties also brought motions for contempt.

{¶4} On July 18, 2024, the trial court gave notice that the final divorce hearing was scheduled for October 28, 2024. On August 13, 2024, Wife filed a request for supplementation of Husband's prior discovery responses. On October 15, 2024, Wife filed a motion in limine to prevent Husband from introducing any witnesses or exhibits not previously disclosed through discovery. Wife argued that "[s]ince the beginning of [the]case, Defendant has claimed that much of the property purchased throughout the marriage was done so with Defendant's separate property. To date,

Defendant has not provided any evidence of having these claims traced and/or provided Plaintiff with documentation regarding the same so she could have her own tracing completed." Wife argued that to allow said witness and/or exhibits which were not provided to her via discovery would be unduly prejudicial to Wife at the final divorce hearing.

{¶ 5} Husband filed a motion for continuance of trial, which Wife opposed. The trial court denied the continuance. The Final Hearing on Wife's complaint for divorce occurred on October 28, 2024. Thereafter, on December 16, 2024, the record reflects Magistrate's Decision Findings of Fact and Conclusions of Law. The magistrate awarded Wife one-half of e-Trade account, #6675, in the amount of $76,910.09.

{¶6} The Magistrate's Decision Findings of Fact and Conclusions of Law provides as follows:

> Investment Accounts
> "E-Trade Accounts"
> Father owns e-Trade account #6675. Father's counsel elicited testimony from Father in an effort to trace a payment into account 6675 and with this payment being gifted from Martin Douglas Minnich (Father's dad). The testimony reflects that Father has always been in business with his dad and that the two of them are involved in Scioto Estates Partnership buying and selling property. Father was asked on direct examination, "You bought and sold property?" He responded, "Correct." Father testified that Exhibit L1 is a deed showing that Scioto Estates Partnership sold a parcel of real estate. The Court notes that Father signed the deed as a General Partner. Exhibit

L1, page 4 is a bank statement reflecting a deposit made in the amount of $494, 472.60. Father's counsel questioned, "That was your net profit from the sale of property in partnership with your dad?" Father answered, "Yes, Sir." Exhibit L2 is another page of Father's bank statement reflecting a withdrawal of $275,000 which Father testified was a payment to his dad of "his (Martin Douglas Minnich's) half of the net investment."

The testimony continued with Exhibits L3 and L4 being introduced to show that a transfer was made from Father's bank account in the amount of $100,000 and these funds went to the e-Trade 6675 account in March, 2018. Before this deposit, the exhibit shows that there was a balance of $14.40 in the 6675 account. No testimony was provided to show the balance in the 6675 account at any later date. Based upon the efforts counsel made to show this balance in the 6675 account as a gift, the Court is of the impression that there is still a significant balance in the 6675 account. Mother's Exhibit 34 is an e-Trade #6675 account statement dated 3/31/2023 reflecting a balance of $153,820. 18. One-half of this balance is $76,901.09.

The Court understands the process of tracing the money from the Scioto Estates Partnership to Father's bank account and then to the 6675 account. However, it is not understood how this is deemed by Father and his counsel to be a "gift." The Court finds that Father was a partner in the partnership and participated in buying and selling of real property. He signed the deed as a general partner and collected approximately one-half of the profits. This seems to be just like any other partnership that is doing well and making money. The partners made a profit. The Court does not find a gift was made but, instead, the partners each earned an income from the partnership. Therefore, the monetary balance in the 6675 account on or about the de facto date of the marriage termination is determined to be marital property subject to division between the parties.

{¶7} On December 24, 2024, Husband filed objections to the magistrate's decision, which included an objection to the award of the e-Trade account.  Also, on December 24, 2024, Husband filed a request for a full transcript of the October 28, 2024 final hearing.[1]  Wife filed a reply to Husband's objections.

{¶8} On February 18, 2025, the trial court filed a Decision and Judgment Entry dismissing Husband's objections for failure to file a transcript of the final hearing.  After another round of disagreements and filings, on April 14, 2025, the trial court entered its Judgment Entry-Decree of Divorce.  Concerning the e-Trade account at issue, the decree states at Page 17 as follows:

> 5.  Investment/Brokerage Accounts:
> b.  Husband's e-Trade (x6675):  Wife shall be entitled to receive one-half (1/2) of Husband's e-Trade (x6675) account as of March 31, 2023.  Wife's marital share of said account is $76,910.09. If applicable, the benefits assigned to Wife shall be taken pro rata from Husband's subaccounts and investments (not including any account loans).  Husband shall retain all remaining funds in the account as his property, free and clear from any claim of Wife.

{¶9} Husband  timely appealed.

---

[1] Husband's brief concedes that there is no transcript filed in this matter.  Husband informs that "one was ordered but Appellant did not timely pay for it and the decision was rendered before he could save up the money."

ASSIGNMENT OF ERROR

I.    THE COURT COMMITTED PREJUDICIAL
      ERROR WHEN IT INCLUDED AND DIVIDED
      PREMARITAL PARTNERSHIP PROPERTY.

Standard of Review

{¶10} "When a trial court grants a divorce, the court must determine what constitutes the parties' marital property and what constitutes their separate property." *Thompson v. Thompson,* 2024-Ohio-2147*,* at ¶ 33, (4th Dist.), quoting *Evans v. Evans,* 2014-Ohio-4450, ¶ 26, (4th Dist.), citing *Barkley v. Barkley,* 119 Ohio App.3d 155, 159 (4th Dist.1997); R.C. 3105.171(B).  "The trial court's characterization of the parties' property involves a factual inquiry." *Id*., citing *Wright v. Wright,* 1994 WL 649271 (4th Dist.1994).  We review such determinations under the standard of manifest weight of the evidence.  *See Thompson, supra*. (Internation citations omitted.)  "A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence." *See Thompson, supra* at ¶ 32; *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, syllabus (1978).

{¶11} This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal.  *See*

*C.E. Morris Co. v. Foley Constr.Co.*, 54 Ohio St. 2d 279, (1978), syllabus;

*In re Jane Doe I*, 57 Ohio St.3d 135, (1991); *Seasons Coal Co. v. Cleveland*,

10 Ohio St.3d 77 (1984).  A reviewing court should be guided by a

presumption that the findings of a trial court are correct, since the trial judge

is best able to view the witnesses and observe their demeanor, gestures, and

voice inflections, and use those observations in weighing the credibility of

the testimony.  *C.E. Morris, supra.*

Legal Principles

Marital Property and Separate Property

{¶12} " 'Marital property' means * * * [a]ll real property that

currently is owned by either or both of the spouses, including [property] that

was acquired by either or both of the spouses during the marriage[.]"  R.C.

3105.171(A)(3)(a)(i).  "Thus, property acquired during the marriage is

presumed to be marital in nature unless it can be shown to be separate."

*Barkley*, at 160.

{¶13} R.C. 3105.171(H) states that "the holding of title to property by

one spouse individually or by both spouses in a form of co-ownership does

not determine whether the property is marital property or separate property."

In *Thompson*, we observed that RC. 3105.171(H) has been interpreted as

follows:

> [T]he form of title is relevant to, but not conclusive of, the classification of property as being either marital or separate. In other words, property held jointly may ultimately be determined to be separate. "In other words, property held jointly may ultimately be determined to be separate while other property held individually may, in fact, turn out to be marital." (Emphasis sic; citations omitted).

*See Barkley* at 161; *Thompson,* at ¶ 34.

{¶14} "Separate property includes '[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.' " *Suppan v. Suppan*, 2018-Ohio-2569, ¶ 21 (9th Dist.), quoting R.C. 3105.171(A)(6)(a)(vii); *Barkley*. Even though a written instrument (deed) transfers property to both a husband and the wife, which is presumed to be marital property, courts, including ours, have considered testimony to determine whether the property was in fact gifted to one of the spouses as their separate property. *See Thompson,* at ¶ 35*; Jones, at ¶ 22; Suppan* and *Barkley.*

{¶15} "The Ohio Supreme Court has held that 'when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property.' " *Entingh v. Entingh*, 2008-Ohio-756, at ¶ 21 (2d Dist.), quoting *Middledorf v. Middledorf,* 1998-Ohio-403, (citations omitted). The

*Middledorf* court concluded that the entire value of the increase in the husband's portion of the business was a marital asset subject to division. The *Entingh* court also observed it had previously held that the full value of an increase during marriage of the husband's partnership interest in his business was marital property subject to division. *Maloney v. Maloney*, 2005-Ohio-1368, ¶ 4-16 (Dist.). *See also Wilson v. Wilson,* 2004-Ohio-6248, (12th Dist.), cert. denied, 105 Ohio St.3d 1470, wherein the court held that the full increase in the value of the husband's half interest in his business was marital property subject to division. *See Entingh*, at ¶ 22 (while parties agreed that husband's shares of EWC stock were gifted to him by his parents and were not initially marital property, husband's sole source of income throughout entire marriage was his work at the family business; husband's efforts directly contributed to the growth of the business; and total increase in the value of stock during marriage was marital property as defined by R.C. § 3105.171(A)(3)(a)(iii)).

{¶16} Husband generally argues that the magistrate and the trial court equated capital gains to profit, ignoring that the "profit" was due solely to appreciation of the land owned by the partnership. While Husband challenges the trial court's analysis of the evidence and testimony at trial, along with the trial court's application of the law, as previously noted,

Husband failed to provide a trial transcript, thus we have no choice but to

presume the validity of the trial court's proceedings.

{¶17} Many times, this court has previously observed:

> Pursuant to App.R. 9(B), it is the appellant's responsibility to order a complete transcript if he intends to argue that a finding is contrary to the weight of the evidence. This duty falls upon the appellant "because the appellant bears the burden of showing error by reference to matters in the record." *Plum Run, Inc. v. Cantor,* 2003-Ohio-5545, ¶ 11 (4th Dist.). Where an appellant fails to provide the portions of the transcript required by an appellate court to resolve the assigned errors, "the appellate court has no choice but to presume the validity of the trial court's judgment and affirm." *Id. See Woodgeard v. Hines*, 2023-Ohio-2362, at ¶ 8 (4th Dist.); *Am. Family Ins. Co. v. Hoop,* 2014-Ohio-3773, ¶ 36 (4th Dist.); *Malone v. Ford,* 2021-Ohio-330, ¶ 9 (4th Dist.); 5 Ohio Jur. 3d Appellate Review § 455 ("An appellate court has nothing to pass on if the appellant fails to provide a transcript of the lower court's proceedings, and the appellate court has no choice but to presume the validity of the lower court's proceedings."). "When an appeal is filed in this court without a transcript, we generally presume the regularity of that proceeding and affirm." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.,* 2010-Ohio-5073, ¶ 14.

{¶18} Without a transcript of the final divorce hearing, we must also

presume that the trial court followed R.C. 3105.171.  *See Pryor v. Pryor,*

2009-Ohio-20009-Ohio-6670, at ¶ 25 (4th Dist.).  (Citations omitted.)

Because we have no record upon which we can review Husband's sole

assignment of error, we must presume the regularity of the trial court

proceeding.  Thus, we overrule Husband's assignment of error and affirm

the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**